**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO FALLER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, ANDREW WITTY, and JOHN REX,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

Plaintiff Roberto Faller ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by UnitedHealth Group Incorporated ("UnitedHealth" or the "Company"), as well as

1

media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein. [1]

## NATURE OF THE ACTION

1.  This is a class action on behalf of persons or entities who purchased publicly traded UnitedHealth securities between December 3, 2024 and April 16, 2025, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.  This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this district.

---

[1] Unless otherwise stated, all emphasis is added.

6.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this district, and Defendants solicited purchasers of UnitedHealth securities in this district.

## PARTIES

7.  Plaintiff, as set forth in the accompanying Certification, purchased UnitedHealth securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8.  Defendant UnitedHealth describes itself (along with its subsidiaries) as follows:

> [UnitedHealth Group is a] health care and well-being company with a mission to help people live healthier lives and help make the health system work better for everyone. The Company's two distinct, yet complementary businesses — Optum and UnitedHealthcare — are working to help build a modern, high-performing health system through improved access, affordability, outcomes and experiences for the individuals and organizations the Company is privileged to serve.

9.  Defendant UnitedHealth is incorporated in Delaware and has principal executive offices at 655 New York Avenue NW, Washington, D.C. 20001.

10. UnitedHealth's shares are listed on the New York Stock Exchange (the "NYSE") under the ticker symbol "UNH."

11. Defendant Andrew Witty ("Witty") served as the Company's Chief Executive Officer ("CEO") throughout the Class Period.

12. Defendant John Rex ("Rex") served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

13. Defendant Witty and Rex are collectively referred to herein as the "Individual Defendants."

14. Each of the Individual Defendants:

a) directly participated in the management of the Company;

b) was directly involved in the day-to-day operations of the Company at the highest levels;

c) was privy to confidential proprietary information concerning the Company and its business and operations;

d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g) approved or ratified these statements in violation of the federal securities laws.

15. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17. The Company and the Individual Defendants are referred to herein, collectively,

as the "Defendants."

18. UnitedHealth and the Individual Defendants are referred to collectively as "Defendants."

## Background

19. On December 4, 2024, Brian Thompson ("Thompson"), the CEO of UnitedHealthcare, the insurance arm of UnitedHealth from 2021 until his death, was tragically gunned down in New York City while walking to the Company's investor conference.

20. It is commonly believed that the accused killer's motivation to attack Mr. Thompson was due to anger regarding UnitedHealthcare's policies under Thompson's leadership, including denial of coverage.

21. With Thompson as CEO of UnitedHealthcare, UnitedHealthcare profits increased, but the Company became increasingly controversial due to denials of coverage.

22. The United States Senate highlighted denials of coverage by UnitedHealth in the weeks before Mr. Thompson's death. On October 17, 2024, the U.S. Senate Permanent Subcommittee on Investigations published a report entitled "Refusal of Recovery: How Medicare Advantage Insurers Have Denied Patients Access to Post-Acute Care." (the "U.S. Senate Report").

23. The U.S. Senate Report stated the following, in part:

The **Subcommittee's analysts of data obtained by UnitedHealthcare**, Humana, and CVS shows that, across all three companies, **prior authorization requests for post-acute care services for Medicare Advantage enrollees were denied at substantially higher rates than prior authorization requests for other types of care**.

\*   \*   \*

The data provided by the companies show that, **not only did insurers deny prior authorization for postacute care more often than other services, but that the rate of denial was substantially higher for some companies**. For UnitedHealthcare and CVS,

5

*2022 denial rates for prior authorization of post-acute care services were approximately three times higher* than the companies' overall denial rates. In the case of Humana, rates for 2022 were over 16 times higher.

24. The U.S. Senate Report contained a section under the heading "*A UnitedHealthcare committee approved an 'auto authorization model' after learning that it resulted in faster review times and increased denials*."

25. Further, on November 19, 2024, mere weeks before Thompson's murder, *ProPublica* issued a report entitled "How UnitedHealth's Playbook for Limiting Mental Health Coverage Puts Countless Americans' Treatment at Risk." *That report discussed how UnitedHealth would use algorithms to identify providers who were giving "too much therapy,"* and then cut reimbursements, which the report noted had been found illegal in three states by the end of 2021. The ProPublica article noted that three states finding the algorithm program illegal "[*b]ut that has not stopped the company from continuing to police mental health care with arbitrary thresholds and cost-driven targets*[.]"

26. In the wake of Mr. Thompson's murder, it was reported that UnitedHealth denied more claims than any other major health insurer. *The Boston Globe* published an article on December 5, 2024 entitled "UnitedHealthcare denies the most claims of any major health insurer; data show." This article discussed how "UnitedHealthcare dismissed about one in every three claims in 2023 – the most of any major insurer. *That's twice the industry average of 16 percent*[.]"

27. In the wake of Mr. Thompson's murder, the reaction was not uniformly sympathetic to Mr. Thompson, who was a father. Instead, Mr. Thompson and UnitedHealth became the target of harsh criticism from politicians, medical professionals, and consumers.

28. On December 7, 2024, the BBC published an article entitled "Killing of

insurance CEO reveals simmering anger at US health system." The BBC article stated the following, documenting popular anger at UnitedHealthcare both before and subsequent to Mr. Thompson's murder:

> The "brazen and targeted" killing of health insurance executive Brian Thompson [. . .]. *The reaction to the crime also exposed a simmering rage against a trillion-dollar industry*.
>
> \*   \*   \*
>
> *The latent anger felt by many Americans at the healthcare system - a dizzying array of providers, for profit and not-for-profit companies, insurance giants, and government programmes - burst into the open following the apparent targeted killing of Thompson[.]*
>
> \*   \*   \*
>
> *A scroll through Thompson's LinkedIn history reveals that many were angry about denied claims.*
>
> *One woman responded to a post the executive had made boasting of his firm's work on making drugs more affordable.*
>
> *"I have stage 4 metastatic lung cancer," she wrote. "We've just left [UnitedHealthcare] because of all the denials for my meds. Every month there is a different reason for the denial."*
>
> \*   \*   \*
>
> In the wake of the shooting, a number of politicians and industry officials expressed shock and sympathy.
>
> \*   \*   \*
>
> But online many people, including UnitedHealthcare customers and users of other insurance services, reacted differently.
>
> Those reactions ranged from acerbic jokes (one common quip was "thoughts and prior [authorizations]", a play on the phrase "thoughts and prayers") to commentary on the number of insurance claims rejected by UnitedHealthcare and other firms.
>
> *At the extreme end, critics of the industry pointedly said they had no pity for Thompson. Some even celebrated his death.*
>
> *The online anger seemed to bridge the political divide.*

> *Animosity was expressed from avowed socialists to right-wing activists suspicious of the so-called "deep state" and corporate power. It also came from ordinary people sharing stories about insurance firms denying their claims for medical treatments.*
>
> The posts underlined the deep frustration many Americans feel towards health insurers and the system in general.

29.     Among politicians, Sen. Elizabeth Warren condemned the killing, but stated that "Violence is never the answer[,] *but people can be pushed only so far*[.]" Referencing other criticism of Mr. Thompson and UnitedHealthcare, Sen. Warren stated that "[t]*he visceral response from people across the country who feel cheated, ripped off, and threatened by the vile practices of their insurance companies should be a warning to everyone in the healthcare system*[.]"

30.     On December 5, 2024, The Daily Beast published an article entitled "Moderators Delete Reddit Thread as Doctors Torch Dead UnitedHealthcare CEO." The article stated the following, in part:

> Doctors in one of the Internet's top medical communities have turned on the murdered UnitedHealthcare (UHC) CEO Brian Thompson in such brutal fashion that Reddit moderators deleted a thread on the killing.
>
> \*     \*     \*
>
> The commentators overwhelmingly criticized—and satirized—the insurer's alleged denial of coverage to sick and dying Americans in order to juice profits.
>
> \*     \*     \*
>
> *One medical doctor, whose identity the Daily Beast confirmed, commented with sympathy for Thompson's family and said the killer should be charged with murder, but then wondered about the damage the CEO had done*.
>
> "*I cannot even guess how many person-years UHC has taken from patients and their families through denials*," they wrote. "It has to be on the order of millions. *His death won't make that better, but it's hard for me to sympathize when so many people have suffered because of his company."*

8

"What has bothered me the most is people that put «fiduciary responsibility» (eg profits) above human lives, none more so than this company as run by him," *wrote another medical doctor, who also spoke to the Daily Beast to confirm their identity. "When other's human lives are deemed worthless, it is not surprising to have others view your life of no value as well."*

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

31. On December 3, 2024, ahead of its December 4, 2024 investor conference in New York City, UnitedHealth introduced its 2024 outlook. The guidance included net earnings of $28.15 to $28.65 per share and adjusted net earnings of $29.50 to $30.00 per share.

32. This guidance was materially false and misleading at the time it was issued because it omitted how the Company would have to adjust its strategy (which resulted in heightened denials compared to industry competitors) because of scrutiny from the United States Senate, as well as public scrutiny. Because of the change in strategy, the Company was deliberately reckless in issuing the 2025 guidance as it related to net and adjusted earnings per share.

33. On January 16, 2025, subsequent to Mr. Thompson's murder, the Company announced that it was sticking with its previously issued guidance. Specifically, the Company issued a press release entitled "UnitedHealth Group Reports 2024 Results." The press release affirmed the guidance issued on December 3, 2024. It stated the following, in pertinent part:

> UnitedHealth Group affirmed the 2025 performance outlook established in December 2024, including revenues of $450 billion to $455 billion, **net earnings of $28.15 to $28.65 per share, adjusted net earnings of $29.50 to $30.00 per share** and cash flow from operations of $32 billion to $33 billion.

34. The statement in ¶ 33 was materially false and misleading at the time it was made because it omitted that the Company was no longer willing (as a result of heightened scrutiny against the Company, as well as open hostility against the Company from large swaths

9

of the general public) to use the aggressive, anti-consumer tactics that it would need to achieve $28.15-$28.65 in earnings per share, or $29.50 to $20.00 in adjusted net earnings per share. As such, the Company was deliberately reckless in doubling down on its previously issued guidance.

35. On January 16, 2025, the Company conducted its Q4 earnings call (the "Q4 Call"). Defendant Rex made the following statement, in pertinent part, reiterating the Company's guidance:

> This morning, I'll discuss both 2024 results and our performance expectations for '25, including some of what we had planned to discuss with you in December.
>
> \*   \*   \*
>
> Next question, given all that, are we confident in the adequacy of our pricing for '25? The answer is yes, and here's why. ***To start, for '25, the outlook we shared in December incorporates a view of care activity commensurate with what we saw in '24, even the care activity we experienced as we exited the year***. I'll break that down with some business line perspectives.

36. The statement in ¶ 35 was materially false and misleading at the time it was made because the Company would not be able to hit its guidance range for net or adjusted earnings per share after shifting away from corporate strategies which were unfriendly to consumers and resulted in higher-than-average claim denials.

37. The statements referenced in ¶¶ 31, 33, and 35 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) UnitedHealth had, for years, engaged in a corporate strategy of denying health coverage in order to boost its profits, and ultimately, its share price; (2) this anti-consumer (and at times unlawful) strategy resulted in regulatory

scrutiny (as well as public angst) against UnitedHealth, which ultimately resulted in the murder of Brian Thompson; (3) animus towards UnitedHealth was such that, subsequent to the murder of Mr. Thompson, many Americans openly celebrated his demise, expressed admiration for his accused killer, and/or otherwise demanded that UnitedHealth change its strategy even if they condemned Mr. Thompson's killing; (4) the foregoing regulatory and public outrage caused UnitedHealth to change its corporate practices; (5) notwithstanding the foregoing, UnitedHealth recklessly stuck with the guidance it issued the day before Thompson's murder, which was unrealistic considering the Company's changing corporate strategies; and (6) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

38. On April 17, 2025, UnitedHealth shocked the market with revised full year guidance. UnitedHealth issued a press release in which it stated that its 2025 net earning outlook would be revised to $24.65 to $25.15 per share (as compared to the prior range of $28.15 to $28.65 per share), and adjusted earnings of $26 to $26.50 (as compared to the prior range of $29.50 to $30.00 per share).

39. The press release indicated that UnitedHealth is allowing increased coverage and care for beneficiaries of Medicare Advantage. As discussed earlier, it had been documented by the United States Senate how UnitedHealth denied claims to beneficiaries under Medicare Advantage.

40. UnitedHealth announced that this outlook reflected two factors, including "***[h]eightened care activity indications within UnitedHealthcare's Medicare Advantage businesses, which became visible as the quarter closed, far above the planned 2025 increase***[.]" The announcement stated that "[t]his activity was most notable within physician and

outpatient services. As noted above, the United States Senate had documented denials of coverage in the Medicare Advantage business as recently as October 2024.

41. The financial community realized that the guidance cut signaled a change in corporate strategy.

42. On April 17, 2025, Lance Wilkes, a senior equity analyst at Bernstein, made a media appearance to discuss the results.

43. Wilkes made the following comments about the results:

[This is very unusual]. There are two big things here. I think the first thing is the higher utilization rate is really surprising coming off the high level of utilization or care activity that we've seen. *What that would suggest to me is that probably United and maybe the industry pulling back on prior authorizations, on kind of the, intensity of some of the activity they do to manage utilization which obviously causes a bunch of consumer dissatisfaction*.

They're pulling back on that a little bit. I'd suspect that what they're seeing is [more utilization as a result] and a lot more than they were expecting. [That's the first thing].

\* \* \*

I think it's probably United pulling back because of the policy headwinds and the scrutiny on the Company. [. . .] That probably leads United [to reset a jump off point] for what their core earnings are going forward.

*That's why the pullback in the stock is reasonable*[.]

44. Wilkes further stated the following in response to a question regarding whether the results were related to Thompson's murder, and if Wilkes could "connect the dots" between the guidance cut and Thompson's murder:

I think there are two things there. *I do think the horrible thing that happened to Brian Thompson and the Company is a part of this*[.] [. . .] They [i.e., the Company] are *likely looking at what they need to be doing from a policy standpoint to be a more acceptable player in the U.S. healthcare system*[.]

\* \* \*

*For United, what they're probably doing is changing the way in which they interact*

*with their consumers*, and they're trying to slowly reset what that expectation is [from United as a health insurer.] And that is probably having a bigger impact than they had expected on levels of utilization.

45.   On this news, UnitedHealth's stock price fell $130.93 per share, or 22.37%, to close at $454.11 per share on April 17, 2025. The next day, it fell a further $28.78 per share, or 6.33%, to close at $425.33 per share on April 18, 2025.

46.   The magnitude of the April 17, 2025 drop was such that it caused the Dow Jones Industrial Average to fall by 1.3%.

47.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased publicly traded UnitedHealth securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, UnitedHealth securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

13

50. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a) whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

    c) whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d) whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

    e) whether Defendants acted knowingly or recklessly in issuing false filings;

    f) whether the prices of UnitedHealth securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

54. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a) UnitedHealth shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

b) As a public issuer, the Company filed periodic public reports;

c) UnitedHealth regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d) UnitedHealth's securities were liquid and traded with moderate to heavy volume during the Class Period; and

e) The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

55. Based on the foregoing, the market for UnitedHealth securities promptly digested current information regarding the Company from all publicly available sources and reflected

such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
## Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
## Against All Defendants

57. Plaintiff incorporates all the foregoing by reference.

58. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

16

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of UnitedHealth securities during the Class Period.

61. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of UnitedHealth's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

62. Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other UnitedHealth personnel to members of the investing public, including Plaintiff and the Class.

63. As a result of the foregoing, the market price of UnitedHealth securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of UnitedHealth securities during the Class Period in purchasing

UnitedHealth securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

64. Had Plaintiff and the other members of the Class been aware that the market price of UnitedHealth's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased UnitedHealth's securities at the artificially inflated prices that they did, or at all.

65. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

66. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of UnitedHealth's securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

67. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

69. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to UnitedHealth's financial condition

and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

70. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of UnitedHealth securities.

71. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

b) awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

        d)      awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 7, 2025　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/Phillip Kim

　　　　　　　　　　　　　　　　　　　　　　**THE ROSEN LAW FIRM, P.A.**
　　　　　　　　　　　　　　　　　　　　　　Phillip Kim, Esq.
　　　　　　　　　　　　　　　　　　　　　　Laurence M. Rosen, Esq.
　　　　　　　　　　　　　　　　　　　　　　275 Madison Avenue, 40th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 686-1060
　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 202-3827
　　　　　　　　　　　　　　　　　　　　　　Email: philkim@rosenlegal.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　lrosen@rosenlegal.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*