UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ROBERTO FALLER, Individually and on
Behalf of All Others Similarly Situated,

                           Plaintiff,

       vs.

UNITEDHEALTH GROUP
INCORPORATED, ANDREW WITTY, and
JOHN REX,

                        Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:25-cv-03799-AKH

CLASS ACTION

MEMORANDUM IN SUPPORT OF LEAD
PLAINTIFF CALIFORNIA PUBLIC
EMPLOYEES' RETIREMENT SYSTEM'S
MOTION TO INTERVENE IN ORDER TO
TRANSFER CASE AND VACATE LEAD
PLAINTIFF DEADLINE

4929-3100-0641.v1

## TABLE OF CONTENTS

**Page**

I.      Introduction ...........................................................................................................1

II.     The Underlying Securities Fraud Claims .............................................................2

III.    Procedural Background .........................................................................................4

IV.     Statutory Framework for Lead Plaintiff Selection Under the PSLRA ..................6

V.      Lead Plaintiff Should Be Permitted to Intervene to Transfer the Case and Vacate
        the Improper Notice Issued ..................................................................................8

        A.      This Motion Is Timely ...............................................................................8

        B.      CalPERS Has a Substantial Interest in This Case as the Court-Appointed
                Lead Plaintiff in the First-Filed Securities Case ......................................9

        C.      This Case May Impair and Impede Lead Plaintiff's Ability to Protect Its
                Interests and Those of the Class ..............................................................10

        D.      Faller Cannot Adequately Represent Lead Plaintiff's Interests and Those
                of the Class ..............................................................................................11

VI.     This Action Should Be Transferred to the U.S. District Court for the District of
        Minnesota for Consolidation Before Judge Bryan...............................................12

VII.    The Lead Plaintiff Deadline Should Be Vacated or Stricken .............................14

VIII.   Conclusion ..........................................................................................................18

4929-3100-0641.v1

# TABLE OF AUTHORITIES

Page

## CASES

*California Public Employees' Retirement System v. UnitedHealth Group Inc.*,
No. 0:24-cv-1743-JMB-DTS (D. Minn.) ........................................................................1

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
127 F. Supp. 2d 572 (D.N.J. 2001) ...........................................................................18

*Christman v. Brauvin Realty Advisors, Inc.*,
191 F.R.D. 142 (N.D. Ill. 1999) ...............................................................................11

*Cieszkowska v. Gray Line N.Y.*,
295 F.3d 204 (2d Cir. 2002) .......................................................................................7

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
2013 WL 5656086 (S.D.N.Y. Oct. 9, 2013) ............................................................13

*Dube v. Signet Jewelers Ltd.*,
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ..........................................................15

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ..................................................................................................13

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) .....................................................................................6, 11

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .............................................................15

*Horowitz v. SunEdison, Inc.*,
2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) .........................................................15

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ....................................................6, 10, 17

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2018 WL 1902725 (D. Minn. Apr. 20, 2018) ....................................................15, 16, 17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ....................................................6, 7, 10

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-cv-06728 (S.D.N.Y. Jan. 7, 2018) ............................................................17

- ii -

Page

*In re Telxon Corp. Sec. Litig.*,
 67 F. Supp. 2d 803 (N.D. Ohio 1999) ....................................................................16

*In re Teva Sec. Litig.*,
 2020 WL 12045998 (D. Conn. Oct. 20, 2020) ..........................................................8

*In re Thornburg Mortg., Inc. Sec. Litig.*,
 629 F. Supp. 2d 1233 (D.N.M. 2009) ....................................................................11

*Kin-Yip Chun v. Fluor Corp.*,
 2020 WL 2745527 (N.D. Tex. May 26, 2020) ........................................................16

*Kipling v. Flex Ltd.*,
 2019 WL 1472358 (N.D. Cal. Apr. 3, 2019) ..........................................................15

*Lax v. First Merchs. Acceptance Corp.*,
 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..........................................................16

*Morgan Guar. Tr. Co. v. Tisdale*,
 1996 WL 544240 (S.D.N.Y. Sept. 25, 1996) ..........................................................13

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
 2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ............................................7, 15, 16

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
 2020 WL 1181366 (D. Conn. Mar. 10, 2020) ..............................................11, 15, 16

*SEC v. Xia*,
 2024 WL 964676 (E.D.N.Y. Mar. 4, 2024) ......................................................10, 11

*Sudunagunta v. NantKwest, Inc.*,
 2017 WL 8811608 (C.D. Cal. Feb. 6, 2017) ..........................................................15

*Summit v. United States Dynamics Corp.*,
 2000 WL 502862 (S.D.N.Y. Apr. 27, 2000) ..........................................................12

*Tachiona ex rel. Tachiona v. Mugabe*,
 186 F. Supp. 2d 383 (S.D.N.Y. 2002) ....................................................................8

*Turner v. ShengdaTech, Inc.*,
 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ..........................................................15

*United States v. Yonkers Bd. of Educ.*,
 801 F.2d 593 (2d Cir. 1986) ....................................................................................8

- iii -

Page

*Waldman v. Vill. of Kiryas Joel*,
   207 F.3d 105 (2d Cir. 2000)............................................................................7

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990).............................................................................9

*Woldanski v. TuSimple Holdings, Inc.*,
   2023 WL 1795191 (S.D.N.Y. Feb. 7, 2023)................................12, 13, 14

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
   899 F. Supp. 2d 235 (E.D.N.Y. 2012) .......................................................14

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b)..........................................................................................................5
   §78t(a) ..........................................................................................................5
   §78u-4(a)(1) .................................................................................................6
   §78u-4(a)(3)(A)(ii)....................................................................................15
   §78u-4(a)(3)(B)(i)........................................................................................6
   §78u-4(a)(3)(B)(iii)(I)(bb)..........................................................................9

28 U.S.C.
   §1331.........................................................................................................12
   §1391(b) ....................................................................................................12
   §1404(a) ...............................................................................................12, 13

Federal Rules of Civil Procedure
   Rule 24 ........................................................................................................8
   Rule 24(a) ...................................................................................................8
   Rule 24(a)(2) ......................................................................................8, 9, 11
   Rule 24(b)(1) ...............................................................................................8

17 C.F.R.
   §240.10b-5 ...............................................................................................2, 5

**LEGISLATIVE HISTORY**
   Private Securities Litigation Reform Act of 1995
   Pub. L. No. 104-67, 109 Stat. 737 (1995) ("PSLRA") ...................... *passim*

4929-3100-0641.v1

## I.    Introduction

Almost a year ago, the U.S. District Court for the District of Minnesota appointed proposed intervenor California Public Employees' Retirement System ("CalPERS" or "Lead Plaintiff") lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") in the related first-filed securities fraud class action *California Public Employees' Retirement System v. UnitedHealth Group Inc.*, No. 0:24-cv-1743-JMB-DTS (D. Minn.) (the "First-Filed Securities Class Action" or "*CalPERS* Action") against UnitedHealth Group Inc. ("UnitedHealth" or the "Company") and its top executives for violations of the Securities Exchange Act of 1934 ("Exchange Act") arising out of the same fraud alleged here.  The court's determination was based, in part, on CalPERS' $76 million loss suffered in connection with its purchase of 1.8 million shares of UnitedHealth stock during the relevant period.  Since then, the First-Filed Securities Class Action has diligently proceeded under Lead Plaintiff's direction.  After additional developments relating to the core theory of liability came to light last month, Lead Plaintiff moved on May 5, 2025 to supplement the complaint and extend the Class Period.  The motion was granted on May 14, 2025.  *See CalPERS* Action, ECF 102, 109.

Two days after CalPERS' motion to supplement was filed, on May 7, 2025, The Rosen Law Firm, P.A. filed a complaint on behalf of a plaintiff who purchased 10 shares of UnitedHealth stock in this District where no defendant is located and where District Judge Jeffrey M. Bryan's jurisdiction does not reach.  *See* ECF 1.[1]  Curiously, the civil cover sheet makes no reference to the

---

[1]    The basis for filing in this Court appears to be the fact that "[o]n December 4, 2024, Brian Thompson ('Thompson'), the CEO of UnitedHealthcare, the insurance arm of UnitedHealth from 2021 until his death, was tragically gunned down in New York City while walking to the Company's investor conference."  ECF 1 at ¶19.

- 1 -

First-Filed Securities Class Action, despite the Rosen Law Firm's awareness thereof.[2] *See* ECF 2 at 1. The Rosen Law Firm also published a notice (mis)informing UnitedHealth investors that they have until July 7, 2025 to seek appointment as lead plaintiff in this case, despite the fact that the U.S. District Court for the District of Minnesota already appointed the nation's largest public pension fund, CalPERS, as the Lead Plaintiff almost a year ago and the *CalPERS* Action encompasses the claims and issues raised in Faller's complaint. Such an end-run around a sister federal court's Order, and the waste of this Court's time and resources, should not be countenenced.

Accordingly, Lead Plaintiff respectfully requests that this Court grant its motion to intervene, vacate the July 7 lead plaintiff deadline, and transfer this case to the U.S. District Court for the District of Minnesota.

## II.    The Underlying Securities Fraud Claims

Both this Action and the *CalPERS* Action allege violations of the Exchange Act and SEC Rule 10b-5 against defendants UnitedHealth and CEO Andrew Witty arising out of their scheme concerning UnitedHealth's fraudulent manipulation of the American healthcare system, and in particular Medicare Advantage – a privatized version of traditional Medicare in which the government pays a set fee to private insurers, like UnitedHealth, to provide insurance plans to qualifying senior citizens.[3] *Compare CalPERS* Action, ECF 110, ¶¶1-10 *with* ECF 1, ¶¶19-30. Throughout the Class Period, UnitedHealth routinely: (a) artificially inflated the payments it

---

[2]    The Rosen Law Firm issued not just 1 or 2, but over 70 press releases regarding the pending action in the U.S. District Court for the District of Minnesota and the lead plaintiff motion in the First-Filed Securities Class Action between May 15, 2024 and July 14, 2024. *See, e.g.*, Exhibit 1 attached hereto (Rosen Law Firm notice dated July 14, 2024).

[3]    In addition to Witty and UnitedHealth, the *CalPERS* Action names Board Chair Stephen Hemsley and former UnitedHealthcare CEO Brian Thompson as defendants. *CalPERS* Action, ECF 110, ¶¶30-33. This Action, in addition to Witty and UnitedHealth, names CFO John Rex as a defendant. ECF 1, ¶¶11-12.

received from the Centers for Medicare and Medicaid Services ("CMS") by fraudulently adding unnecessary and unwanted diagnoses to the charts of Medicare Advantage members; and (b) routinely denied necessary care for Medicare Advantage patients at rates far higher than the national average. *Compare CalPERS* Action, ECF 110, ¶¶58-166 *with* ECF 1, ¶¶22, 23, 24, 39, 40. This abuse of Medicare Advantage garnered the attention of the American public and the national media, and also resulted in significant regulatory and governmental scrutiny on the Company. The ongoing investigations include, but are not limited to, investigations by the United States Senate and the U.S. Department of Justice ("DOJ"). *Compare CalPERS* Action, ECF 110, ¶¶16-25, 159-165, 217-220 *with* ECF 1, ¶¶19-30, 37.

Even as the federal government increased its scrutiny of UnitedHealth and its policies, which impacted the ability of UnitedHealth to effectively engage in its manipulations of the Medicare Advantage program, defendants publicly remained bullish with respect to its Medicare Advantage business, providing knowingly false and misleading 2025 earnings projections to the market and misleading the market as to the strength of UnitedHealth's Medicare Advantage business. *Compare CalPERS* Action, ECF 110, ¶¶256, 258-260 *with* ECF 1, ¶¶31-36.

On the morning of April 17, 2025, before the market opened, UnitedHealth announced that it would be slashing its prior-issued 2025 earnings guidance by 12% due to problems in its Medicare Advantage business, causing the Company's stock to drop by more than 20%. *Compare CalPERS* Action, ECF 110, ¶¶357-369 *with* ECF 1, ¶¶38-47. Market analysts immediately connected this decline and the Company's Medicare Advantage problems to the increased government enforcement and public scrutiny relating to the Company's Medicare Advantage business practices. *Compare CalPERS* Action, ECF 110, ¶¶358-369 *with* ECF 1, ¶¶41-47.

- 3 -

### III.    Procedural Background

The initial complaint in the *CalPERS* Action was filed over one year ago on May 14, 2024 in the U.S. District Court for the District of Minnesota.  *CalPERS* Action, ECF 1.  On July 29, 2024, that court appointed CalPERS as Lead Plaintiff.  *CalPERS* Action, ECF 32.  CalPERS filed its Consolidated Complaint for Violations of the Federal Securities Laws on October 4, 2024.  *CalPERS* Action, ECF 45 (the "Consolidated Complaint").

Since filing the Consolidated Complaint, the ongoing investigations against UnitedHealth and a stream of new public information have compelled CalPERS to update its allegations on three occasions: (1) with leave of the court on November 25, 2024, CalPERS filed a supplemental complaint incorporating into its pleadings, *inter alia*, a report released by the Office of the Inspector General for the Department of Health and Human Services that corroborated UnitedHealth's fraudulent Medicare Advantage practices (*CalPERS* Action, ECF 54); (2) on March 21, 2025, CalPERS filed an amended complaint, incorporating into its pleadings, *inter alia*, an additional partial corrective disclosure following the announcement of a new civil fraud investigation into UnitedHealth by the DOJ (*CalPERS* Action, ECF 97); and (3) on May 5, 2025, CalPERS supplemented its pleadings to incorporate, *inter alia*, yet another partial corrective disclosure, this time as a result of UnitedHealth's April 17, 2025 reduction of its earnings guidance.[4]  *CalPERS* Action, ECF 102.  Earlier this week, on May 14, 2025, the U.S. District Court for the District of

---

[4]    The stream of developments related to *CalPERS'* allegations remains ongoing with *The Wall Street Journal* reporting on May 13, 2025 that CEO Witty stepped down for "personal reasons" on May 13, 2025 and the Company was suspending its 2025 guidance (*UnitedHealth CEO Is Out, Sending Shares Plummeting*, by Anna Wilde Mathews and Christopher Weaver) and on May 14, 2025 reporting that *UnitedHealth Group Is Under Criminal Investigation for Possible Medicare Fraud* (also by Christopher Weaver and Anna Wilde Mathews) which stated that "the Company's stock has declined over financial performance and sudden replacement of CEO."  The *Faller* complaint was amended on May 14, 2025 to include the related May 13, 2025 disclosure concerning Witty's departure and guidance suspension.  ECF 5.

Minnesota granted CalPERS' motion for leave to supplement and the Supplemental First Amended Consolidated Complaint for Violation of the Federal Securities Laws has now been filed. *CalPERS* Action, ECF 110.

On May 7, 2025, two days ***after*** CalPERS filed its May 5, 2025 motion to supplement, this case was filed on behalf of Faller, who purchased 10 shares of UnitedHealth stock, and a putative class of purchasers or acquirers of UnitedHealth securities during an overlapping time period, alleging claims based on the very same facts upon which CalPERS' May 7, 2025 motion was based and which CalPERS' Supplemental First Amended Consolidated Complaint alleges. Indeed, the purported *Faller* class period overlaps with the Class Period alleged in the Supplemental First Amended Consolidated Complaint in the *CalPERS* Action. *Compare* ECF 1 *with CalPERS* Action, ECF 110.

Like the *CalPERS* Action, this case alleges violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 against UnitedHealth and CEO Andrew Witty, as well as certain other UnitedHealth executives. ECF 1, ¶¶2-18. Like CalPERS' Supplemental First Amended Consolidated Complaint (*see CalPERS* Action, ECF 110), this Action alleges that, following increased regulatory and public scrutiny as a result of fraudulent and unethical business practices, UnitedHealth made a series of false and misleading statements regarding its 2025 earnings projections and the health of its Medicare Advantage business from December, 2024 through April, 2025. ECF 1, ¶¶31-37. Also like CalPERS' Supplemental First Amended Consolidated Complaint, this Action alleges that, before the market opened on April 17, 2025, UnitedHealth announced that it had slashed its 2025 earnings projections, thereby causing UnitedHealth's common stock price to fall by more than $130 per share. *Id*., ¶¶38-47.

4929-3100-0641.v1

## IV.    Statutory Framework for Lead Plaintiff Selection Under the PSLRA

The PSLRA establishes an orderly procedure for appointing a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). The Second Circuit has held that the PSLRA's lead plaintiff provisions are a mandate by Congress to vest the lead plaintiff with authority "to exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004).[5] Thus, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff  namely to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id.*; *In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) (recognizing that "a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class"); *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("in a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class").

Stated differently, "variations in class definition do not defeat consolidation or justify a proliferation of overlapping classes." *Facebook*, 2013 WL 4399215, at *6 (recognizing that "Plaintiffs cannot displace Lead Plaintiffs from their leadership role by laying claim to representation of a supposedly more inclusive class"). The reason is simple: "if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members." *Id.* at *5. Indeed, a "judgment in either class action would preclude further litigation of

---

[5]    Unless otherwise noted all emphasis is added and citations are omitted.

the other, and the Exchange Act Plaintiffs and the Lead Plaintiffs would thus necessarily be in destabilizing competition to race to an early resolution." *Id.* (citing *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (explaining the "well-established rule that a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)"); *see also Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002) ("'Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.'")).  As Judge Sweet concluded in *Facebook*, "[s]uch conflicts are avoided by having Lead Plaintiffs control a single consolidated action on behalf of a unitary putative class."  2013 WL 4399215, at *5.

To hold otherwise would invite lawyer-driven litigation that the PSLRA seeks to avoid, and would likely encourage the filing of "tag-along" actions each time a new fact emerges (just like here), interfering with the Lead Plaintiff's ability to effectively manage the existing litigation in an efficient and diligent manner that is in the best interests of the putative class.  *See Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) (recognizing that "a new notice is not automatic because issuing a new notice after each new complaint or amendment could cause 'appointment of lead counsel [to] be delayed indefinitely . . .  [, and s]uch result would clearly thwart the intent of the PSLRA'") (alteration in original).

Thus, to prevent an investor who purchased 10 shares of UnitedHealth stock from undermining the PSLRA's statutory framework and usurping CalPERS' position as the court-appointed Lead Plaintiff, this Court should permit CalPERS to intervene and vacate the improperly issued notice that set July 7 as the deadline for seeking appointment as lead plaintiff in this case.

4929-3100-0641.v1

## V.   Lead Plaintiff Should Be Permitted to Intervene to Transfer the Case and Vacate the Improper Notice Issued

"On timely motion, a court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Alternatively, a court "may permit" anyone to intervene who: "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[This] test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002). Furthermore, courts generally "equate mandatory and permissive intervention and require that '[t]o be granted intervention as of right or by permission, an applicant must' satisfy the four requirements described above." *In re Teva Sec. Litig.*, 2020 WL 12045998, at *1 (D. Conn. Oct. 20, 2020).

As the court-appointed Lead Plaintiff in the First-Filed Securities Class Action, CalPERS is entitled to intervene under either Rule 24(a)(2) or (b)(1)(B) to transfer the case and vacate the improper notice issued.

### A.   This Motion Is Timely

Under Rule 24, the threshold inquiry is whether a motion for intervention is timely and "the decision is one entrusted to the district judge's sound discretion." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986). Here, the *Faller* complaint was filed on May 7, 2025, and the July 7, 2025 purported lead plaintiff deadline has not yet run. The motion is therefore timely.

- 8 -

4929-3100-0641.v1

**B.      CalPERS Has a Substantial Interest in This Case as the Court-Appointed Lead Plaintiff in the First-Filed Securities Case**

The second factor in determining whether a motion to intervene should be granted is whether the proposed intervenor can claim "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).  This interest must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).

The factual and legal issues to be resolved in this case are nearly identical to those at issue in the First-Filed Securities Case, and Lead Plaintiff has been charged by the U.S. District Court for the District of Minnesota with protecting the interests of UnitedHealth investors and has a far greater financial interest in the favorable resolution of these overlapping issues as court-appointed Lead Plaintiff in the First-Filed Securities Case than Faller does.  *See supra* §§II-III.  Perhaps most importantly, CalPERS purchased over 1.8 million shares of UnitedHealth stock and suffered hundreds of millions of dollars in losses.  *See CalPERS* Action, ECF 21-3; ECF 110-14.  By contrast, plaintiff Faller purchased 10 shares and claims approximately $1,176 in losses. *See* ECF 1. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (lead plaintiff must have "the largest financial interest in the relief sought by the class").

Indeed, based on CalPERS' satisfaction of the PSLRA requirements in the First-Filed Securities Case, the U.S. District Court for the District of Minnesota appointed CalPERS as Lead Plaintiff to represent investors for the same claims against UnitedHealth and its senior insiders about the same fraud, bestowing upon CalPERS the authority to direct the prosecution of any related claims.  *CalPERS* Action, ECF 32.  Further, two days before plaintiff Faller's complaint was filed in this case, CalPERS moved to supplement its pleadings to incorporate additional facts as a result of UnitedHealth's April 17, 2025 reduction of its earnings guidance.  *Compare CalPERS* Action, ECF

- 9 -

102, 104 (alleging Class Period of September 22, 2021 through April 16, 2025) *with* ECF 1 (alleging

class period of December 3, 2024 through April 16, 2025).  That motion has since been granted and

CalPERS' Supplemental First Amended Consolidated Complaint has been filed.  Consequently,

CalPERS has demonstrated an undeniable interest in this Action.

### C.    This Case May Impair and Impede Lead Plaintiff's Ability to Protect Its Interests and Those of the Class

"The third element of the intervention-as-of-right standard concerns whether the putative

intervenor can demonstrate that, absent intervention, the disposition of the action may, as a practical

matter, impair or impede its interests."  *SEC v. Xia*, 2024 WL 964676, at *11 (E.D.N.Y. Mar. 4,

2024).  Specifically, "'[i]mpair refers to a diminution in strength, value, quality, or quantity.'"  *Id.*

If Faller, who purchased 10 shares of UnitedHealth stock, were allowed to prosecute this

duplicative Action separately from the First-Filed Securities Case, there is undoubtedly a risk that

this case would proceed on a different timeline with different rulings and therefore impair CalPERS'

ability to prosecute the case on behalf of the putative class.  That would be contrary to the PSLRA

(as well as inefficient).

Avoiding such duplication and impairment is why courts, including those in this District,

recognize that "lead plaintiff is empowered to control the management of the litigation as a whole,

and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class."

*Bank of Am.*, 2010 WL 1438980, at *2.  "Permitting other plaintiffs to bring additional class actions

now, with additional lead plaintiffs and additional lead counsel, would interfere with [CalPERS']

ability and authority to manage the [First-Filed Securities Class Action]."  *Id.* (noting that plaintiffs

in subsequently filed but duplicative actions are "free to pursue their claims as individual cases  but

not as class actions"); *Facebook*, 2013 WL 4399215, at *6 (same).  "It would also negate the

purpose of the PSLRA: to 'empower one or several investors with a major stake in the litigation to

- 10 -

4929-3100-0641.v1

exercise control over the litigation as a whole.'" *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *15 (D. Conn. Mar. 10, 2020) (quoting *Hevesi*, 366 F.3d at 82 n.13). Accordingly, this criteria for intervention is also easily satisfied.

### D. Faller Cannot Adequately Represent Lead Plaintiff's Interests and Those of the Class

Under Rule 24(a)(2), a "putative intervenor's burden of demonstrating inadequacy of representation is generally speaking minimal." *Xia*, 2024 WL 964676, at *12 (cleaned up). Indeed, the requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Id.* Here, denying intervention would reward the filing of a wholly duplicative copycat case by a nominal shareholder in a remote jurisdiction far away from the First-Filed Securities Action (with a flimsy basis for invoking venue), undermine the Lead Plaintiff Order issued by the U.S. District Court for the District of Minnesota, and usurp CalPERS' statutory right as the court-appointed Lead Plaintiff to control the litigation – the exact type of gamesmanship the PSLRA was enacted to prevent. *See Christman v. Brauvin Realty Advisors, Inc.*, 191 F.R.D. 142, 151 (N.D. Ill. 1999) (recognizing that the most adequate plaintiff presumption "is not an open-ended presumption" that can be asserted anew "whenever [a challenger] wants to seize control of the litigation," particularly where the challenger "never made a motion for appointment as lead plaintiff"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1240 (D.N.M. 2009) (recognizing that "[l]itigation is an ongoing process, and it is not surprising that new time periods might come under the umbrella of a particular case as time passes" and declining to allow the restarting of the lead plaintiff process).

Accordingly, CalPERS satisfies all of the criteria for intervention and its motion should be granted.

4929-3100-0641.v1

**VI.    This Action Should Be Transferred to the U.S. District Court for the District of Minnesota for Consolidation Before Judge Bryan**

Pursuant to 28 U.S.C. §1404(a), "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a); *see also Woldanski v. TuSimple Holdings, Inc*., 2023 WL 1795191, at *1 (S.D.N.Y. Feb. 7, 2023) (Hellerstein, J.) (explaining appropriate analysis and ordering transfer of second-filed securities case filed by the Rosen Law Firm to district where first-filed action was pending). The purpose of §1404(a) is to "'prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Summit v. United States Dynamics Corp*., 2000 WL 502862, at *2 (S.D.N.Y. Apr. 27, 2000). Transferring this Action to the U.S. District Court for the District of Minnesota serves those purposes.

The threshold question is whether this case could have been brought originally in the transferee forum, the District of Minnesota. *See* 28 U.S.C. §1404(a); *TuSimple*, 2023 WL 1795191, at *1-*2. The answer is a resounding yes. UnitedHealth is headquartered in Minnetonka, Minnesota and the *CalPERS* Action, arising out of the same core facts, is pending there. It is also where defendants engaged in their fraudulent scheme and disseminated false and misleading statements about the Company's business. *CalPERS* Action, ECF 110, ¶¶231-277. Further, the District of Minnesota has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act. *Id*., ¶26. And finally, venue is proper in the District of Minnesota because that court has personal jurisdiction over defendants under 28 U.S.C. §1391(b) and §27 of the Exchange Act. *Id*., ¶27. Therefore, while this case should never have been filed separately, if Faller was insistent upon doing so, it should have been filed in the District of Minnesota.

- 12 -

In addition, other relevant factors support transfer. *TuSimple*, 2023 WL 1795191, at *1 (noting that "[i]n assessing whether transfer is an appropriate exercise of discretion, courts balance various factors"). First, transferring this case to the District of Minnesota would foster judicial efficiency. *See Morgan Guar. Tr. Co. v. Tisdale*, 1996 WL 544240, at *9 (S.D.N.Y. Sept. 25, 1996) (noting that "'the consolidation of pretrial discovery' . . . favor[s] the litigation of [related] claims in one forum"); *Ferens v. John Deere Co*., 494 U.S. 516, 531 (1990) (parallel litigation "'leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent'"). The scheme giving rise to the claims is the same, the defendants are the same, and the legal theories are the same. *See* §II *supra*. This case should, therefore, be transferred to the U.S. District Court for the District of Minnesota and consolidated with the *CalPERS* Action before Judge Bryan, who has ably overseen the litigation for over a year.

Second, the District of Minnesota is the locus of operative facts of this case. *TuSimple*, 2023 WL 1795181, at *3 (finding the location of a defendant company's corporate headquarters to strongly suggest it is the locus of operative facts). Third, all the statements Faller is challenging, as well as the documents related to those statements, were issued from the District of Minnesota, and in securities fraud actions "'[m]isrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received.'" *Id*. at *4. Fourth, the witnesses are likely to reside in Minnesota and that District would be most convenient to them. *Id*. And fifth, the District of Minnesota would be a more convenient forum for the parties. *See id*. (transfer to first-filed District is "more convenient on the whole because that is where the Defendant-issuer is located, and where the majority of Individual Defendants reside"); *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp*., 2013 WL 5656086, at *2 (S.D.N.Y. Oct. 9, 2013) (granting defendants' motion to transfer securities class action case where the plaintiff's choice of U.S.

District Court for the Southern District of New York was "untethered from the parties and operative facts" and the "factual connections to New York are threadbare").[6]

Transfer to the jurisdiction in which the *CalPERS* Action is pending is also consistent with the long-established principle that where, as here, there are "'two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'" *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (transferring case to jurisdiction where first-filed case was pending). Indeed, the "Supreme Court has acknowledged that application of the 'first-filed' rule promotes 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id*. at 244.  Here, the Court should apply the first-to-file rule and transfer this case to the U.S. District Court for the District of Minnesota, where the case can be consolidated into the *CalPERS* Action that has been pending for over a year.

For all these reasons, the Court should transfer this case to the District of Minnesota.

## VII.    The Lead Plaintiff Deadline Should Be Vacated or Stricken

The U.S. District Court for the District of Minnesota appointed CalPERS as Lead Plaintiff on July 29, 2024.  *CalPERS* Action, ECF 32.  Despite the fact that *Faller* is redundant of the claims and allegations in the First-Filed Securities Case, Faller's counsel improperly issued a press release advising investors of their supposed right to seek appointment as lead plaintiff in *Faller* no later than July 7, 2025.  Because the actions are clearly related, should ultimately be consolidated upon transfer, and there is an existing Lead Plaintiff (CalPERS), this Court should vacate the *Faller* lead

---

[6]    Other factors that courts consider are not as relevant, but also support transfer.  *See TuSimple*, 2023 WL 1795181, at *1-*5 (other factors include the plaintiff's choice of forum, the availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, and the forum's familiarity with the governing law).

plaintiff deadline and require publication of a corrected notice informing investors that no new lead plaintiff motions will be heard.

Indeed, the PSLRA expressly provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff . . . in the first filed action shall be required to cause notice to be published." 15 U.S.C. §78u-4(a)(3)(A)(ii). Based on this statutory text, courts "disfavor republication of notice under [the] PSLRA when a Class Period is extended beyond the period contained in the First-Filed Securities Class Action." *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011).[7] "Instead, courts generally require republication of notice only 'where the amended complaint substantially alters the claims or class members.'" *Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016).[8] The claims in *Faller* and the *CalPERS* Action – violations of the

---

[7] *See also Teva*, 2020 WL 1181366, at *10 (recognizing that when "'the legal claims are the same and the factual allegations are substantially similar between the original and amended Complaints,'" no new notice is necessary under the PSLRA); *Okla. Law Enf't*, 2017 WL 3780164, at *3 ("While the allegations are more expansive in the *Kim* and *Troll* Complaints, they are not entirely new legal or factual allegations nor do they include an entirely new class of securities. The new complaints changed the class period, but ***simply changing the class period does not necessitate a new notice*** be sent out."); *Sudunagunta v. NantKwest, Inc.*, 2017 WL 8811608, at *4 (C.D. Cal. Feb. 6, 2017) (finding no republication of notice required even where "newly filed complaints expanded the class period (by about sixteen months)" and "added a Securities Act claim to the previously alleged Exchange Act claims"); *Horowitz v. SunEdison, Inc.*, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (finding that "PSLRA does not require republication of notice" where original case and subsequent case assert "'substantially the same claim or claims,'" even where class period is expanded).

[8] *See also Kipling v. Flex Ltd.*, 2019 WL 1472358, at *1 (N.D. Cal. Apr. 3, 2019) (vacating lead plaintiff order and requiring republication of notice "[b]ecause Bristol's amended complaint ***substantially alters*** the class's allegations against Flex"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 1902725, at *5 (D. Minn. Apr. 20, 2018) (recognizing that courts only appoint separate lead plaintiffs when there are "***vast differences*** between the classes the lead plaintiffs sought to represent"); *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (recognizing new notice and reopening of lead plaintiff process is appropriate when subsequent complaints "'***dramatically alter[] the contours of the lawsuit***'").

- 15 -

Exchange Act – are identical.  *See supra* §II.  Consequently, the *Faller* notice should not have been issued.  *See Kin-Yip Chun v. Fluor Corp.*, 2020 WL 2745527, at *5 (N.D. Tex. May 26, 2020) (declining to permit follow-on plaintiff to restart lead plaintiff proceedings even when initial class period was expanded by 22 months because "the conduct in the amended consolidated complaint constitute[d] 'a clear continuation of the conduct' alleged in the initial consolidated complaint"); *Teva*, 2020 WL 1181366, at *11 (finding publication of new notice unwarranted because "the conduct alleged in the [later-filed] complaint is a clear continuation of the conduct alleged in the [first-filed case], and the success of the [later-filed] complaint would depend on many of the facts that the Plaintiffs in this action must prove to sustain their claims as asserted in the [first-filed case]").[9]

Moreover, "[b]ecause no new notice was required, the deadline to file a request to be Lead Plaintiff expired [on July 15, 2024], and [any new motion[s] [would be] time-barred." *CenturyLink*, 2018 WL 1902725, at *5-*6 (The "PSLRA has a strict deadline for filing lead plaintiff motions, stemming from Congress's intent 'to have lead plaintiffs appointed as soon as practicable.'"); *Okla. Law Enf't*, 2017 WL 3780164, at *3 (because "all potential plaintiffs in the [newly filed expanded Class Period cases] had adequate notice to file a motion for appointment as lead plaintiff [when the original case was filed]," the "appropriate time to respond was sixty days from the notice being published in the [original] action"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D.

---

[9]   Nor does Faller's amendment of his initial complaint on May 14, 2025 to extend the end of his class period to May 12, 2025 alter the analysis.  *See Kin-Yip Chun*, 2020 WL 2745527, at *5 (recognizing that "'appointment of lead counsel could be delayed indefinitely if new complaints alleging earlier [or later] starting dates for the class period' or new allegations are filed" and declining to restart lead plaintiff process); *Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (recognizing that "requiring published notices for complaints that merely expand the class period to inform class members that they may move to be appointed lead counsel within sixty days of the ***date of that published notice*** would be inconsistent with the purposes of the PSLRA") (emphasis in original).

4929-3100-0641.v1

Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."). Having issued approximately 73 press releases regarding the July 15, 2024 lead plaintiff motion deadline in the First-Filed Securities Class Action between May 15, 2024 and July 14, 2024, Faller's counsel cannot claim ignorance thereof.

Furthermore, once a lead plaintiff is appointed, that lead plaintiff is vested with authority to prosecute all related claims – a responsibility that necessarily includes the "authority to decide what claims to assert on behalf of the class." *Bank of Am.*, 2010 WL 1438980, at *2.  Permitting Faller's counsel to restart the lead plaintiff process for a putative class already represented by CalPERS undermines the PSLRA, is inefficient, and wasteful of both judicial and litigant resources.  Indeed, two days before Faller's complaint was filed, CalPERS had diligently filed a proposed supplemental complaint alleging the exact same statements were misleading that Faller subsequently alleged were false in his complaint.  *See supra* §II.  Consequently, "the interests of the class are fully protected and there is no need to appoint separate leadership to assert the claims that [CalPERS] has already been appointed to pursue." *CenturyLink*, 2018 WL 1902725, at *5.

Ultimately, because no new notice was required and should not have been issued, the Court should vacate the July 7, 2025 lead plaintiff deadline and require that a corrected notice be published informing investors that the deadline to file motions for lead plaintiff has passed, as Faller's notice is likely to result in confusion and a waste of judicial resources if not corrected.  *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728, ECF 100 (S.D.N.Y. Jan. 7, 2018) (vacating notice issued by follow-on plaintiff and authorizing lead counsel to issue corrective notice); *cf. Cal. Pub.*

- 17 -

*Emps.' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 581 (D.N.J. 2001) (requiring plaintiff to redraft misleading PSLRA notice).[10]

## VIII.   Conclusion

Because CalPERS is already serving as the court-appointed Lead Plaintiff in the First-Filed Securities Case, CalPERS should be permitted to intervene in this follow-on case and this case should be transferred to the U.S. District Court for the District of Minnesota so it can be consolidated with the First-Filed Securities Case.  Moreover, the duplicative notice issued to UnitedHealth's investors by Faller's counsel of the non-existent right to seek appointment as lead plaintiff on July 7, 2025 in connection with the filing of this duplicative Action was improper and should be vacated as soon as practicable.

DATED:  May 16, 2025                                    Respectfully submitted,

                                                                            ROBBINS GELLER RUDMAN
                                                                              & DOWD LLP
                                                                            CHAD JOHNSON
                                                                            NOAM MANDEL


                                                                            *s/ Noam Mandel*
                                                                            NOAM MANDEL

                                                                            420 Lexington Avenue, Suite 1832
                                                                            New York, NY  10170
                                                                            Telephone:  212/432-5100
                                                                            chadj@rgrdlaw.com
                                                                            noam@rgrdlaw.com

---

[10]   A proposed form of a corrective press release is attached as Exhibit A attached to the [Proposed] Order, submitted concurrently herewith.

4929-3100-0641.v1

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
SAM S. SHELDON
LAURIE L. LARGENT
ROBERT R. HENSSLER JR.
JEFFREY J. STEIN
JACK ABBEY GEPHART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff California Public
Employees' Retirement System and the Class

**LOCAL CIVIL RULE 7.1(C) CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for proposed intervenor California Public Employees'

Retirement System, certifies that this brief contains 5,038 words, which complies with the word limit

of Local Civil Rule 7.1(c).

_s/ Noam Mandel_
NOAM MANDEL

4929-3100-0641.v1